## CHARLES A. CAMPBELL, trading as C. A. CAMPBELL & COMPANY *vs.* FRANK EHLEN, trading as EHLEN BROTHERS.

*Contract for Sale and Shipment of Coal—Delivery—Demurrage—Ex parte proceedings in Admiralty.*

The plaintiff sold to the defendant a certain amount of coal with the stipulation that it was to be delivered on board the defendant's vessel at Baltimore. No special time was agreed on for the delivery; but the plaintiff contracted to do the best he could in loading the vessel, and she was loaded as promptly as it was in his power to do. After loading, the schooner sailed for Boston, where, soon after her arrival, and after discharging a part of the cargo, the master filed a libel in the admiralty for demurrage. Notice of this proceeding was given to the defendant by the plaintiff. No person appearing for the defence, the libel was taken *pro confesso*, and after an *ex parte* hearing it was decreed that the portion of the cargo which had not been discharged should be sold. It was sold and bought by the defendant, who was part owner of the vessel. HELD :

That the coal became the property of the defendant as soon as it was loaded on board the schooner at the port of Baltimore, and from that time the plaintiff had no further interest in it, and was not affected by the admiralty proceedings, and was entitled to recover the contract price of so much of the coal as had not been paid for.

Assuming that the plaintiff had committed a default by not delivering the coal in time, yet when it was delivered and accepted it became the property of the defendant.

APPEAL from the Superior Court of Baltimore City.

This was an action brought by the appellee against the appellant to recover the price of a cargo of coal sold by the former to the latter. The case is stated in the opinion of the Court.

Campbell *vs.* Ehlen.

*Exception.*—At the trial the plaintiff offered the two following prayers, and motion to exclude:

1. If the jury shall believe from the evidence that the defendant came to Baltimore on the sixth day of December, 1890, and that the plaintiff then explained to him the difficulties of getting coal at that time, and that he was entirely dependent upon the railroad for his supply of coal, and that it was very uncertain when the schooner "C. A. Campbell" could be loaded, and that the plaintiff did not promise to load the schooner within any particular time, but only to do the best he could for her, and that the defendant then consented that his said schooner should remain and be so loaded, and that the plaintiff was not guilty of any neglect or default in the loading of said schooner, but did all he could to load her promptly; then the jury is instructed that the plaintiff is entitled to recover the contract price of so much of the coal which they find the plaintiff loaded on said schooner as yet remains unpaid for, with interest thereon in the discretion of the jury.

2. If the jury shall find the execution of the written contract of sale and the bill of lading offered in evidence, then the jury is instructed that the property in the coal passed to the defendant as soon as it was put on board the schooner C. A. Campbell, from which time the plaintiff had no interest in said coal, and that proceedings taken in Boston, shown by the record offered in evidence, do not in any way affect the right of the plaintiff to recover in this action, and that their verdict must be for the plaintiff if they find the facts stated in his first prayer.

The plaintiff moved the Court to exclude from the consideration of the jury the proceedings of the United States Court in Boston:

1st. Because the plaintiff had no interest in the coal which was seised in that suit, and is not therefore bound by it.

Campbell vs. Ehlen.

2nd. Because said evidence contradicts the previous testimony given by the defendant's witnesses as to the contract of affreightment made by said vessel.

The defendant offered the two prayers following and motion to exclude:

1. That it being admitted by the plaintiff that he received from the defendant due notice of the facts that the agent of the vessel Charles A. Campbell had libelled her cargo and attached the same in the District Court of the United States for the District of Massachusetts, and that said suit was based upon the claim for demurrage growing out of the alleged failure of the plaintiff to load said vessel within the time in which he had agreed to load her, the record of the proceedings in said cause of the master of said vessel against said cargo, which has been produced as evidence in this case, is conclusive proof against the plaintiff of the fact that the contract between the plaintiff and the agent of said vessel, as to the loading of said vessel, set out in said proceedings, was made, that said contract was violated by the plaintiff, and that in consequence of his said violation of his contract by the plaintiff, a large part of said cargo was finally decreed to be sold, and was sold by the United States marshal at the suit of said agent in said proceedings, to satisfy his said claim for demurrage, and therefore the plaintiff is not entitled to recover in this cause anything on account of said portion of said cargo thus sold, and the plaintiff having admitted in this case that the remaining part of said cargo had been paid for by the defendant, at the rate agreed upon, their verdict must be for the defendant.

2. If the jury find from the evidence that on the 6th day of December, 1890, the plaintiff, Frank Ehlen, entered into an agreement with Charles A. Campbell, representing the owners of the ship Charles A. Campbell, to load said ship with a cargo of 2500 tons of coal

for shipment from Baltimore to Boston, in fulfillment of a contract previously entered into between said plaintiff and defendant for the sale of said coal; and if the jury find that it was agreed between the plaintiff and the said Charles A. Campbell, acting as the agent for the owners of said vessel, that said vessel should be loaded on or before the 15th day of December; and if the jury shall find that the plaintiff did not complete the loading of said vessel within said time, but on the contrary failed to finish loading her until the 7th day of January, 1891; that upon the arrival of said vessel at Boston, her master filed a libel against the cargo in the District Court of the United States for the District of Massachusetts, and attached the same for the purpose of obtaining satisfaction of a claim for demurrage against the plaintiff growing out of his failure to load said vessel within the time called for by his said contract; and if the jury further find that immediately upon discovering that said cargo had thus been libelled and attached, the defendant, Charles A. Campbell, notified the plaintiff Ehlen of the fact that said cargo had thus been attached; and if the jury further find, that the said proceedings in said suit against said cargo resulted in a decree for the sale of 1700 tons of said cargo, and that said 1700 tons were in fact sold by the United States marshal in satisfaction of said decree, then the plaintiff is not entitled to recover anything against the defendant on account of said 1700 tons, and it being admitted in this cause that all the balance of said coal had been duly paid for by the defendant, the verdict of the jury should be for the defendant.

The defendant moved the Court to exclude from the consideration of the jury all the testimony which had been offered on behalf of the plaintiff, for the purpose of proving that the contract with reference to loading the vessel "Charles A. Campbell," which is alleged and

Campbell *vs.* Ehlen.

set forth in the libel in the case of Hall, master, against the said cargo, the record of which has been filed in this cause, was not in fact made as therein alleged, and also all testimony offered by the plaintiff for the purpose of showing that at the time of the loading of said vessel there was unusual difficulty of the shippers in obtaining transportation for their coal, and that the delay in loading said vessel was due to that cause; all the aforesaid testimony having been admitted subject to exceptions.

The Court (STEWART, J.) granted the prayers of the plaintiff, and overruled the defendant's motion to exclude, and refused his prayers.

The defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, BRYAN, FOWLER, and McSHERRY, J.

*William L. Marbury*, and *Robert H. Smith*, for the appellant.

*Charles S. Hayden*, and *John T. Mason*, *R.*, for the appellee.

The contract of sale and the bill of lading show conclusively that the coal became the property of the vendee (the appellant) the moment it was delivered upon the schooner, and the plaintiff had no further interest in it from that time. *Magruder vs. Gage*, 33 *Md.*, 344; *Farmers' Phosphate Co. vs. Gill*, 69 *Md.*, 545.

Judgments in admiralty *in rem* are binding only upon those who have an interest in the *res* and they only can intervene and set up a claim to the property taken. *Freeman on Judgments, secs.* 613, 617; 2 *Black on Judgments, sec.* 795; *The Mary*, 9 *Cranch*, 144, 146; *Durant vs. Abendroth*, 97 *N. Y.*, 140, 141, 142.

Campbell *vs.* Ehlen.

It is only where there is a warranty of title expressed or implied, that has been violated, that the vendor is bound by the notice of a suit against his vendee. 2 *Sutherland on Damages*, 421. Or where the vendee has been compelled to pay money to release the property from some lien or incumbrance created by the vendor or some debt due by him. *Myers vs. Smith and Barrick*, 27 *Md.*, 107.

It follows therefore that the plaintiff's second prayer was properly granted, and the two prayers of the defendant were properly refused.

Where parties contract with a full knowledge of all the circumstances, and the vendee has full and fair notice that delays are inevitable in the delivery, and consents to take his chances, the vendor is not liable for delays occurring without his fault, and from causes known at the time of contracting. *Harris, et al. vs. Dreesman*, 23 *L. J.*, (*Ex.*,) 210; *Adams vs. Royal Mail Steam-Packet Co.*, 5 *C. B.*, (*N. S.*,) 492; *Atwood, and others vs. Emery*, 1 *C. B.*, (*N. S.*,) 110.

Even in cases of demurrage proper, the party is not liable for delays occurring without his fault. *The Glover*, 1 *Brown's Admiralty Rep.*, 166; *Fulton vs. Blake*, 5 *Bissell*, 371; *Coombs vs. Nolan, et al.*, 7 *Benedict*, 301.

BRYAN, J., delivered the opinion of the Court.

There was some conflict of evidence in this case. According to the testimony for the plaintiff below (who is now appellee,) he through his agents, Alden and Nevin, contracted to sell and deliver to the defendant (who is now appellant) five thousand tons of coal to be delivered free on board the defendant's vessel at Baltimore. The contract was as follows: "Order No. 24, Boston, June 24th, 1890. Ehlen Bros., sold to Messrs. C. A. Campbell & Co., Chelsea, Mass. To be shipped as ordered. 22 feet Water No. —, Beam No. —. Bridges not insure. 5,000 tons of Big Vein Cumberland coal at

$2.15 f. o. b.; they will send their own vessel. We think they will take their first cargo soon; will advise us in a day or two. Yours truly, Alden & Nevin.'' During the summer and early fall of 1890, twenty-five hundred tons of the coal were delivered by the plaintiff and duly paid for by the defendant. In the month of November, 1890, in consequence of negotiations between Alden and Nevin, the plaintiff's agents and the defendant, it was agreed that the plaintiff should load the schooner "Charles A. Campbell" with the remainder of the coal, and the schooner came to Baltimore; the plaintiff did not make a contract to load the vessel at any specified time, but only to complete the loading as soon as possible. On the sixth day of December, the defendant came to Baltimore and had an intervinw with the plaintiff, and having heard his explanations about the great difficulty of getting transportation for coal from the mines, and the inevitable delay in loading, and the impossibility for the plaintiff to fix any time for doing so, he expressed himself as perfectly satisfied. On the seventh day of January, 1891, the full cargo was placed on board the schooner Charles A. Campbell, amounting to twenty-five hundred and sixteen tons, and the captain signed bills of lading without protest, and without making any claim for damages on account of delay or for demurrage; and he did not at any time during the delivery of the coal in Baltimore claim that the plaintiff had agreed to load the vessel within a stipulated time. The foregoing statement is the substance of the evidence in behalf of the plaintiff on the subject of the contract and its fulfilment.

On the part of the defendant the evidence contradicted the plaintiff's case in very important particulars. It tended to show that when the schooner arrived at the port of Baltimore in November, 1890, she was light and ready for loading, and that her master (Hall,) on the

first day of December, reported her arrival to the plaintiff, and gave him notice that the vessel was ready for loading; that before she sailed from Boston the plaintiff agreed with the defendant to load her during the first week of December; that the delay in loading was caused by the fault of the plaintiff; that the master of the schooner gave notice to the defendant of the plaintiff's action in respect to the delay in loading, and that finally in an interview with the defendant who was part owner of the schooner and was acting in behalf of the other owners, the plaintiff promised and agreed that he would complete the loading on or before the fifteenth of December. The principal conflict of evidence occurs on the question whether the plaintiff was bound to complete the loading on or before the fifteenth of December.

The schooner arrived at the port of Boston on the fourteenth day of January, 1891, and after discharging about nine hundred tons of coal, the master on the next day filed a libel in the Admiralty for demurrage, alleging that the plaintiff in this action had made a verbal contract of affreightment with the defendant, who was then acting in behalf of the owners of the schooner, and that by the terms of the contract of affreightment the plaintiff was bound to begin loading immediately upon notice of the arrival of the schooner at Baltimore, and to load her at the rate of a hundred and fifty tons of coal per working day until she had a full cargo, and that in case the vessel should be detained longer than was necessary to load her at that rate, he would pay demurrage at the rate of six cents per ton upon the number of tons named in the bill of lading, for each and every day that she should be so detained. Notice of this proceeding was promptly given to Ehlen by Campbell. No person appearing for the defence, the libel was taken *pro confesso*, and after an *ex parte* hearing, it was decreed that the portion of the cargo which had not been

Campbell *vs.* Ehlen.

discharged should be sold by public auction. It was sold and bought by this defendant. In the libel suit a petition was filed by Morse, who styled himself the managing owner of the schooner, claiming freight alleged to be due by this plaintiff, and a decree was passed that it should be paid out of the proceeds of sale of the cargo. The expenses of sale, costs of suit, and the amounts of the decrees for demurrage and freight exceeded the sum of money for which the cargo was sold.

The plaintiff offered two prayers which were granted by the Court. By them the jury were instructed in substance that by the written contract and bill of lading the property in the coal passed to the defendant as soon as it was put on board of the schooner, and that from that time the plaintiff had no further interest in the coal, and that he was not affected by the Admiralty proceedings for its sale; and that if the plaintiff did not agree to load the schooner within any particular time, but only to do the best he could for her, and if the defendant consented that the schooner should remain, and be so loaded, and if the plaintiff was not guilty of any neglect or default in the loading, but did all he could to effect it promptly; then he was entitled to recover the contract price of so much of the coal as had not been paid for, with interest in the discretion of the jury. The defendant offered two prayers which were rejected by the Court. The first prayer insisted that the plaintiff's rights were concluded by the Admiralty proceedings, inasmuch as he had received notice of their pendency. The second prayer maintained that if the agreement was to load the schooner on or before the fifteenth of December, and the plaintiff did not complete the loading until the seventh of January, that the Admiralty proceedings were binding on him, if he received immediate notice of them from the defendant.

Campbell *vs.* Ehlen.

There was evidence competent to sustain the plaintiff's theory of the facts. According to this theory the coal was sold to the defendant with the stipulation that it was to be delivered on board the defendant's vessel at Baltimore, and no special time was fixed for the delivery; but the agreement was that the plaintiff was to do the best he could in loading the vessel, and in point of fact he did load her as promptly as it was in his power to do. Upon the finding of these facts by the jury the plaintiff's right to recover was clearly established. It was a very simple case of a sale of goods, and a delivery according to the terms of the contract. The coal became the property of the defendant as soon as it was loaded on board the schooner at the port of Baltimore, and the plaintiff had no further interest in it. The plaintiff's contract was then fulfilled, and it became the duty of the defendant to pay according to the terms of sale. The coal was libelled in the Admiralty in Boston for demurrage by the master of the vessel, of which the defendant was part owner, and on which it had been loaded by his direction, and at the sale it was purchased by him. Another part owner of the vessel filed a claim in the Admiralty suit for freight and both these claims were allowed; with the exception of about nine hundred tons, which had been delivered before the institution of the Admiralty proceedings, the entire value of the cargo was consumed in paying these claims and the costs incurred in the suit. It would be a strange anomaly if the plaintiff's interests could be affected by such proceedings as these conducted in reference to merchandise, which did not belong to him. But there was evidence on the part of the defendant tending to show that the plaintiff was in default in regard to the time of the delivery of the coal, in that he did not load the vessel on or before the fifteenth of December. Suppose this to be so; it was received by

the master of the vessel, who was appointed by the defendant to receive it; no claim was made at the time for damage caused by the delay, and a bill of lading was signed by the master for its delivery to the defendant or his assigns, he or they paying freight. If under these circumstances there could be any reclamation in behalf of the defendant, assuredly it would not be such as is claimed by him in his prayers. All the evidence on both sides in relation to the sale and delivery of the coal shows that it was to be delivered on board of the vessel owned in part by the defendant, and that he was acting in behalf of the other owners; nothing whatever was testified which tended in the remotest degree to show that the plaintiff had contracted to pay freight or demurrage; but everything strongly negatived such a supposition. How could it be possible then that the statements of the master of the vessel and Morse, one of the owners, in the Admiralty suit could be evidence against the plaintiff. They state that the plaintiff made a verbal contract of affreightment; that he agreed to pay demurrage and freight at certain rates per ton specifically stipulated. We could hardly imagine a more signal violation of the rules of evidence than the admission of such testimony. Assuming that the plaintiff had committed a default by not delivering the coal in time; yet it is most clear that when it was delivered and accepted it became the property of the defendant. It was shipped on a vessel of which he was part owner by his directions given while he was representing the other owners. The record does not show what were his responsibilities to the other owners; but there is no legitimate evidence in this record which shows that he could involve the plaintiff in a liability for freight or demurrage.

*Judgment affirmed.*

(Decided 7th June, 1892.)